UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| CATHY EPPINGER, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION FILE NO.: |
| | ) |
| v. | ) 1:21- cv-00268 – KAC  CHS |
| | ) |
| UNIVERSITY OF TENNEESSEE | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |

## AMENDED COMPLAINT FOR DAMAGES

Cathy Eppinger ("Eppinger"), Plaintiff in the above styled action, by and through counsel, files her Amended Complaint for Damages and Demand for Jury Trial.

## PRELIMINARY STATEMENT

1. Plaintiff Eppinger, brings this action against the University of Tennessee at Chattanooga ("UTC") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") as codified, 42 U.S.C. §§ 2000e *et seq.*, Age Discrimination in Employment Act of 1967, (ADEA) as codified, 29 U.S.C. §§ 621 to 634, Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA") as codified, 42 U.S.C. §§ 12101 to12213, collectively the (ADA).

1

2. Plaintiff Eppinger is an African American woman, over the age of forty, who wears a hearing aid due to a disability.

3. At all times relevant to this action, Mrs. Eppinger was employed as an Administrative Assistant III at the University of Tennessee at Chattanooga, (UTC).

4. It is Plaintiff Eppinger's information and belief that she has been subjected to unequal terms and conditions of employment based on her race, age and disability, as well as the retaliatory acts of supervisors and co-workers.

5. Mrs. Eppinger has been treated less favorably that female co-workers outside of her protected class and denied equal access to opportunities to earn additional pay, and to be considered for select management-initiated job assignments that act as a prerequisite for promotional opportunities.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to 28 USC 1331, in that this is a civil action arising under Title VII, the ADA and Age Discrimination.

## VENUE

7. Venue is proper in this District Court under 28 U.S.C. 1391(b)(2), in that a substantial part of the events or omissions giving rise to Eppinger's Title VII for disparate treatment and disparate impact claims occurred in this district.

## CONDITION PRECEDENT

8. Plaintiff Eppinger timely filed an initial inquiry with the TN Human Rights Commission ("THRC") and received a Right To Sue Letter from the EEOC prior to filing her complaint in the Circuit Court of Hamilton County, TN.

9. Plaintiff Eppinger's complaint contains allegations of discrimination based on race which has resulted in unequal access to opportunities to earn higher wages and to be considered for promotional opportunities.

10. Plaintiff Eppinger filed an additional charge with the EEOC on the basis of retaliation, age, and disability, which is currently under investigation.

11. Plaintiff Eppinger has fully complied with all prerequisites to jurisdiction in this court.

## PARTIES

12. Plaintiff Eppinger is a member of a protected class. She is an African American woman, over the age of forty (40), who has a disability (wears a hearing aid due to hearing loss).

13. Plaintiff Eppinger is a resident of the State of Tennessee, County of Hamilton.

14. Plaintiff Eppinger is an employee, as defined by Title VI, Title VII, the ADA, and ADEA.

15. Defendant, University of Tennessee, at Chattanooga, is an employer as defined by Title VI, Title VII, the ADA, and the ADEA.

16. Defendant, University of Tennessee, at Chattanooga, can be served with process through the UTC Office of General Counsel.

## DISCRIMINATION BASED ON RACE
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 200E

17. Plaintiff Eppinger began working for the UTC in the year 2011 as an Administrative Assistant III in the Occupational Therapy Department.

18. As an Administrative Assistant III in the Occupational Therapy Department, Plaintiff Eppinger was isolated and forced to work out of a closet after inquiring about the Department's admission criteria.

19. Plaintiff Eppinger noted that an African American male applicant was denied admission to the Occupational Therapy Department who seemed to be more qualified than a White female applicant, who was admitted.

20. After working collaboratively with management from 2011 to 2015, Plaintiff Eppinger was informed that she was not a good fit and that she needed to seek alternate employment within the University.

21. The Occupational Therapy Department underwent a reorganization and Plaintiff Eppinger's duties were transferred to an alternate employee.

22. Plaintiff Eppinger was essentially stripped from all of her assigned duties and forced to apply for alternate positions within UTC.

4

23. With the assistance of Human Resources, Plaintiff Eppinger applied for and was hired for the position of Administrative Assistant III with the UTC Facilities, Planning, and Management Department.

## **DISPARATE TREATMENT BASED ON RACE**

24. Eppinger came to the position of Administrative Assistant III with a Bachelor of Science degree from Covenant College in Organizational Management, and Associate Degree of Applied Science in Office Administration. She has worked within the UTC system for over ten years without being promoted.

25. In her current position with the UTC Facilities Division, Eppinger has consistently received favorable performance reviews, meeting or exceeding all of the requirements of her current position as an Administrative Assistant III.

26. Despite Eppinger's advance degrees and performance history, her peers have been treated more favorable than she has, receiving higher yearly performance ratings, and access to opportunities for increased wages and/or work assignments that lead to advancement.

27. Plaintiff Eppinger in the only female, African American, Administrative Assistant III employed in the UTC Facilities, Planning, and Management Department.

28. It is her information and belief that she has been treated less favorable than her peers due to her race, age and/or disability.

## UNEQUAL PAY FOR PERFORMANCE

29. Linda Sue Stephen's job duties included responsibility for Eppinger's yearly performance reviews. Plaintiff Eppinger consistently received favorable performance evaluations and was awarded yearly performances-based salary increases.

30. Even though Plaintiff Eppinger received the same favorable reviews on her yearly skills assessment as her peers, Eppinger's compensation was not awarded at the same rate as her Non-African American Administrative Assistant III peers.

31. In 2018, Eppinger addressed the issue of unequal pay to her supervisor, Linda Sue Stephen, regarding two white females, Kelsey Battles, and Amy Steele, who were given a higher yearly raise than Eppinger.

32. The rating to pay discrepancy was corrected with a pay increase consistent with the written evaluation and back pay.

33. In 2019, Eppinger, received a performance rating with the numerical value of twenty-three. She again went to her supervisor, Linda Sue Stephens, and asked why she received a lower salary increase than her peers.

34. Donnie Hodge, supervisor of Facilities Operation & Maintenance, and Linda Sue Stephens, informed Eppinger that a score higher than a twenty-three (23) makes one eligible up to a 5% pay raise on yearly performance reviews.

35. Eppinger consistently received a performance score of a twenty-three.

6

36. Eppinger received a score higher than (23), only after she refused to accept a rating less than twenty-five.

37. On December 9, 2021, the Tennessee Human Rights Commission sent notification to UTC that a complaint of employment discrimination had been filed.

38. Two days later, Eppinger was called into the office and received a pay raise of $3.86.

## **UNEQUAL ADVANCEMENT OPPORTUNITIES BASED ON RACE**

39. On May 28th, 2018, Amanda Winesburgh, white female, was hired in the non-exempt position of Project Coordinator.

40. Prior to her promotion, Amanda Winesburgh held the position of Administrative Assistant III.

41. April 1, 2019, Amanda Winesburgh was promoted from non-exempt to exempt status.

42. May 17, 2019, Debbie Corey, white, female, over the age of forty, was promoted from non-exempt status to exempt status.

43. April 20, 2020, Amanda Winesburgh was promoted to Business Manager

44. On February 2020, Kelsey Battle, white female, was promoted to a lead role with two direct reports.

45. On November 2021, Brandon Bratt, African American male, was promoted from non-exempt status to exempt status.

46. Plaintiff Eppinger's has not been given the same or similar opportunities for advancement to lead roles, or to position reclassification opportunities as her peers.

47. It is her information and belief that her race, age and/or disability have played a role in her inability to gain access to promotional opportunities, which is a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e ("Title VII").

## THE ROLE OF POSITION RECLASSIFICATION

48. According to UTC, Assistant Vice Chancellor of Human Resources, Laure Pou, the position of Business Manager was a reclassification with revised position responsibilities specifically established for Amanda Winesburgh.

49. According to Human Resources, once it was determined that Ms. Winesburgh met the requirements for assuming the duties of the revised position description, a search was not required that would result in soliciting applications or reviewing the qualifications of applicants.

50. It is Plaintiff Eppinger's information and belief that African American male and female applicants have had to apply for and interview to be considered for promotional opportunities.

51. Examples include the promotions of Myra Armstrong, black female, and Freddy Sturdivant, black male, as supervisors of Building Services.

52. What follows is a listing of individuals with the UTC Facilities and Business Services Department, who were not required to apply or interview for the positions listed below.

1. Chelsey Ewing – Project Coordinator -2016 – white female
2. Kellie Flood – Space Project Management – 2011 – white female
3. Rob Henry Project Coordinator – 2017 – white female
4. Anthony Storti – Logistics Analyst – white female
5. Amanda Winesburgh – Project Coordinator – 2018- white female
6. Amanda Winesburgh – Business Manager – 2020 white female
7. Brandon Pratt – 2020 – Supervisor – black male

8

## RETALIATION AFTER ENGAGING IN PROTECTED ACTIVITY

53. On December 31, 2020, Anthony McClellan contacted Plaintiff Eppinger on a three-way call with Julie Brown, of Human Resources for a meeting with Human Resources.

54. Plaintiff Eppinger asked to reschedule and the meeting was re-scheduled for January 8th, 2021.

55. During the January 8th, 2021 meeting, Plaintiff Eppinger was advised that UTC had opened an investigation regarding inappropriate conduct on the part of Plaintiff Eppinger towards Amanda Winesburgh.

56. On April 16, 2021, Eppinger was notified via email that she was to attend a mandatory meeting with her Supervisor, Anthony McClellan, and Laure Pou, Vice Chancellor of Human Resources. McClellan did not disclose the reason, nor the subject matter of the meeting.

57. Eppinger subsequently received a Final Written Warning dated April 16, 2021, for behavior reportedly observed by her supervisor, Anthony McClellan, in February of 2021 between Eppinger and Winesburgh. The observed behavior referenced Eppinger making inquiries to Amanda Winesburgh regarding the new phone system installed in the office being used by Winesburgh.

58. The write-up provides no specific description of the acts in question which constituted aggressive behavior, or any specific information that would identify the behavior that gave rise to the offense.

59. Plaintiff Eppinger had no prior disciplinary actions prior to the Final Written Warning dated April 16, 2021.

60. Plaintiff Eppinger asserts that the employment action, is (1) motivated by Eppinger's challenge to UTC's employment practices, and (2) is not based in fact.

## UNEQUAL DISCIPLINARY TREATMENT BASED ON RACE

61. Exempt employees at the University are paid monthly; annual leave/sick leave.

62. It is UTC policy that exempt employees deviate all leave time.

63. It was known throughout the Facilities, Planning and Management Department, that a White, female UTC employee wrongfully obtained salary payments for six years without consequence. No disciplinary action was taken.

64. This is in direct contrast to Eppinger, who received a Final Written Warning with **NO** advance written warnings, or progressive disciplinary action.

65. As a direct result of the receipt of a Final Written Warning, Eppinger could not apply for UTC job opening for a period of six months.

66. Eppinger further contends that UTC is liable for retaliation/hostile work environment based on the following factors:

   a. Eppinger engaged in protected activity when she questioned why the position of Business Manager was not posted;
   b. Eppinger's supervisor knew that she had engaged in protected activity;
   c. Eppinger's supervisor subjected her to an adverse employment action; which included the removal of select job junctions;
   d. And, a causal connection exists between the protected activity and the adverse employment action.

67. UTC failed to make a reasonably informed and considered decision before taking such a profound adverse employment action as a final written warning.

68. Any reasonable employee would find a final written warning so adverse as to have a chilling effect on their willingness to engage in any further protected activity.

## TRANSFER OF JOB FUNCTIONS

69. Plaintiff Eppinger has been systematically subjected to retaliation after engaging in protected activity, which included being blocked from accessing information essential to her job duties, and the reassignment of historic Administrative Assistant III position responsibilities.

70. After being promoted to Business Manager, Amanda Winesburgh, completed two part time employee's payroll for the Facilities Planning & Management Department. From this date forward a pattern emerged in which select job functions were removed from Plaintiff Eppinger, which has the outcome of diminishing Eppinger's work assignments associated with advancement opportunities.

71. The reassignment of essential job duties has carried over to the submission of invoices to accounting services and the entering of Motor Pool Invoices, a job function that has been assigned to Plaintiff Eppinger for the last 5 years.

72. Once a job function is removed from Eppinger, a new process emerges that completely eliminates Eppinger's previously assigned duties associated with the function.

73. When Plaintiff Eppinger attempted to raise job encroachment issues with Anthony McClellan, he became angry and shouted at her. Plaintiff Eppinger has been verbally mocked, laughed at, and told to leave McClellan's office.

11

74. Plaintiff Eppinger was blamed for having started this argument, despite it having originated with a simple request for information.

## DISPARATE IMPACT
## UNEQUAL ACCESS TO ADVANCEMENT OPPORTUNITIES

75. On March 8, 2021, Kelsey Battles' promotion was announced.

76. Plaintiff Eppinger, attempted to addressed the issues of Battle's promotion with Anthony McClellen. His only statement was "Cathy I know where you are going with this," implying that Eppinger was unreasonable in making inquiries to management about a matter previously investigated by the THRC.

77. Plaintiff Eppinger's former supervisor, Linda Sue Stephens retired on November 30, 2020, making $26 hourly. Rather than position Plaintiff Eppinger, who served as her back up for five years, to assume her job functions, Linda Sue Stephens was asked to returned to her former position on a part-time basis to train others.

78. Plaintiff Eppinger has the requisite knowledge, skills and abilities to act as back up for Linda Sue Stephens for a period of five years. However, Plaintiff Eppinger was not considered for Mrs. Stephens position.

## DAMAGES

79. Plaintiff Eppinger suffers from panic attacks, depression, hair/weight lost and humiliation as a result of this stress associated with her employment environment.

80. UTC has acted with reckless indifference to the manner in which its position reclassification policies impact its employees who are members of a protected class. The facts will show Eppinger's rights under both Federal and State of Tennessee equal employment opportunity laws continues to be ignored. UTC has acted with malice and reckless indifference to Eppinger's civil rights, and therefore must be held accountable for punitive damages.

**WHEREFORE**, Plaintiff Eppinger respectfully prays that this Court enter judgment as follows:

1. Accept Jurisdiction over this matter;

2. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

3. Award Plaintiff compensatory, liquidated, and punitive damages;

4. Order Defendants to obtain training in employment discrimination consistent with the UTC Diversity Mission.

5. Award to Plaintiff Eppinger all costs and reasonable attorneys' fees incurred in connection with this action.

6. Order Defendants to conduct an analysis of the impact it's reclassification policy on members of protected classes, specifically the impact on racial minorities, and persons with a disability.

7. Grant Plaintiff Eppinger such additional or alternative relief as the Court deems just and proper, which includes considerations for advancement in a position that she is qualified to perform.

8. Grant such additional or alternative relief as the Court deems just and proper.

This 10th day of February, 2022.

Respectfully submitted,

**STRONG MOSS LAW**

Jacqueline Strong Moss BPR 022952
*Attorney for Plaintiff Cathy Eppinger*
1089 Bailey Avenue, Suite C7
Chattanooga, TN 37404
423-580-5621  Voice
931-572-5483  Fax
strongmosslaw@gmail.com  E-mail

# UNITIED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

| | |
|---|---|
| CATHY EPPINGER, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION FILE NO.: |
| ) | |
| v. ) | 1:21-CV-00268 -KAC-CHS |
| ) | |
| UNIVERSITY OF TENNEESSEE ) | JURY TRIAL DEMANDED |
| AT CHATTANOOGA ) | |
| ) | |
| Defendants. ) | |

## VERIFICATION

Personally appeared before the undersigned officer duly authorized to administer and receive oaths, Plaintiff Cathy Eppinger, who after being duly sworn, states that all of the allegations in the foregoing Verified Complaint for Damages and Demand for Jury Trial are true and correct to the best of her knowledge, information, and belief.

This 10th day of February, 2022.

_____
Mrs. Cathy Eppinger

Sworn to and subscribed before me
This 16th day of February, 2022.

_____
Notary Public
My commission expires: 3/24/2024



15

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was delivered to the following persons set out below by electronic mail/U.S. Mail postage prepaid On this the 10th day of February 2022.

UTC of Tennessee at Chattanooga
Yousef Hamadeh Esq.
Office of the General Counsel
615 McCallie Avenue
Chattanooga, TN 37403

UTC of Tennessee at Chattanooga
Michael Fitgerald, Esq.
Office of the General Counsel
505 Summer Place, UTT #1120A
Knoxville, TN 37902

**STRONG MOSS LAW**

Jacqueline Strong Moss, BPR 022952
1089 Bailey Avenue, Suite C7
Chattanooga, TN 37404