STATE OF TENNESSEE
COUNTY OF HAMILTON

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA

| | |
|---|---|
| **CATHY EPPINGER**<br>Plaintiff,<br><br>V.<br><br>**UNIVERSITY OF TENNESSEE**<br>**AT CHATTANOOGA**<br>Defendant, | Civil Action No: 1:21-CV-00268-KAC-CHS<br><br>**FILED**<br><br>JURY TRIAL DEMAND   JUL 07 2022<br><br>Clerk, U. S. District Court<br>Eastern District of Tennessee<br>At Chattanooga |

## AMENDED COMPLAINT FOR DAMAGES

## BACKGROUND

Through the Amended Complaint, **(1)** Plaintiff Eppinger seek to add her second right to sue letter from EEOC dated May 28, 2022 **(exhibit A Part 1 - 4)**. Plaintiff Eppinger filed an additional charge with the EEOC, September 9, 2021 with an appointment date of December 3, 2021 on the basis of retaliation, age discrimination, and disability. The charges were under investigation (EEOC), but later closed on April 28, 2022 due to the original complaint that is currently in Federal Court, and the latest amended complaint (1:21-CV-00268-KAC-CHS) filed on February 10, 2022. According to EEOC all allegations in charging party's charge (494-2021-0263) with the EEOC were covered. Therefore, the Commission (EEOC) close the case because a lawsuit had been filed on the charges in Federal Court case 1:21CV-00268-KAC-CHS. **(2)** An inquiry **(EEOC)** was submitted on June 16, 2022, with an interview date on September 13, 2022 for an additional complaint for retaliation, harassment, discrimination. The adverse action consists of exclusion, and low score of "13" performance evaluation for year 2021 was submitted to Plaintiff Eppinger on May 12, 2022, unjustifiable. The results for Plaintiff Eppinger **"NOT"** eligible for cross the board raise for year 2022 **(Exhibit B Part 5 - 10)**, **(rebuttal, Exhibit C 16)**. Exclusion from June 15, 2022, UTC event was witnessed by Jean Betters, Work Control Specialist of Facilities Planning and Management. Additionally, a performance evaluation for year 2020 was not given as her counterparts **(Exhibit D Part 17)**.

1

**Moreover,** Before the Court is Plaintiff Cathy Eppinger's ("Eppinger") Amended Complaint ordered by the court on June 27, 2022 to file by July 8, 2022. Defendant notified court on June 24, 2022 of no opposition to Plaintiff [doc 31] motion to "Amend" filed on June 23, 2022. **WHEREAS** Plaintiff Eppinger files her Amended Complaint for Damages, which adds three causes of actions for unjustified low scored 2021 performance review, exclusion from event, and a hostile work environment (unjustified constant emails). All in violation while "Plaintiff Eppinger engaged in protected activity" (Retaliation). Plaintiff Eppinger remains focused on obtaining monetary damages in this matter of all court cost, Unfair Business Practices and other judgement awards listed in page 14 & 15 (attached therein).

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was delivered to the following persons set out below by U.S. mail and postage prepaid

On this ___7th___ day of ___July___ 2022

UTC of Tennessee at Chattanooga
Yousref Hamadeh Esq.
Office of the General Counsel
615 McCallie Avenue
Chattanooga, TN 37403

UTC of Tennessee at Knoxville
Michael Fitzgerald, Esq
Office of the General Counsel
505 Summer Place, UTT # 1120A
Knoxville, TN 37902

STATE OF TENNESSEE
COUNTY OF HAMILTON

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA

| | |
|---|---|
| **CATHY EPPINGER**<br><br>Plaintiff,<br><br>V.<br><br>**UNIVERSITY OF TENNESSEE**<br>**AT CHATTANOOGA**<br><br>Defendant, | Civil Action No: 1:21-CV-00268-KAC-CHS<br><br>FILED<br>JUL 07 2022<br>Clerk, U. S. District Court<br>Eastern District of Tennessee<br>At Chattanooga<br><br>JURY TRIAL DEMAND |

## AMENDED COMPLAINT FOR DAMAGES

**Comes Now** the Pro Se Plaintiff Cathy Eppinger ("Eppinger"), Pro Se Plaintiff in the above styled action, files her **Amended Complaint** with the Honorable U.S. District Court and, Pro Se Plaintiff herein will show before the Honorable U.S. Court all facts, circumstances, detailing among other things, and files her Amended Complaint for **Damages** and **Demand for Jury Trial**.

### PRELIMINARY STATEMENT

1. Plaintiff Eppinger, brings this action against the University of Tennessee at Chattanooga ("UTC") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") as codified, 42 U.S.C. §§ 2000e et seq., Age Discrimination in Employment Act of 1967, (ADEA) as codified, 29 U. S. C. §§ 621 to 634, Americans with disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA") as codified, 42 U.S.C. §§ 12101 to 12213, collectively the (ADA).

2. Plaintiff Eppinger is an African American woman, over the age of forty, who wears a hearing aid due to a disability.

3. At all times relevant to this action, Mrs. Eppinger was employed as an Administrative Assistant III at the University of Tennessee at Chattanooga, (UTC).

3

4. It is the Plaintiff Eppinger's information and belief that she has been subjected to unequal terms and conditions of employment and belief that she has been subjected to unequal terms and conditions of employment based on her race, age and disability, as well as retaliatory acts of the supervisors and co-workers.

5. Mrs. Eppinger has been treated less favorably that female co-worker outside of her protected class and denied equal access to opportunities to earn additional pay, and to be considered for select management-initiated jobs assignments that act as a prerequisite for promotional opportunities.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331, in that this is a civil action arising under Title VII, the ADA and Age Discrimination.

## VENUE

7. Venue is proper in the District Court under 28 U.S.C. 1391(b)(2), in that a substantial part of the events or omissions giving rise to Eppinger's Title VII for disparate treatment and disparate impact claims occurred in this district.

## CONDITION PRECEDENT

8. Plaintiff Eppinger timely filed an initial inquiry with the TN Human Rights Commission ("THRC") and received a Right to Sue Letter from the EEOC prior to filing her complaint in the Circuit Court of Hamilton County, TN **(Exhibit A, Part 1 - 4)**.

9. Plaintiff Eppinger's complaint contains allegations of discrimination based on race which has resulted in unequal access to opportunities to earn higher wages and to be considered for promotional opportunities.

10. Plaintiff Eppinger filed an additional charge with The EEOC on the basis of retaliation, age discrimination and disability, which was under investigation but was later closed on April 28, 2022 by the Commission (EEOC) because a lawsuit had been filed on the charges in Federal Court **(Exhibit A, Part 1 - 4)**.

11. An inquiry **(EEOC)** was submitted on June 16, 2022, with an interview date on September 13, 2022 for an additional complaint retaliation, harassment, discrimination,

4

12. Plaintiff Eppinger was excluded from UTC event, and an unjustified low performance evaluation score of "13" was submitted to Plaintiff Eppinger on May 12, 2022, with results NOT eligible (part 13) for cross the board raise for year 2022 **(Exhibit E, Part 18 - 22).**

13. Plaintiff Eppinger has fully complied with all prerequisites to jurisdiction in this court.

## PARTIES

14. Plaintiff Eppinger is a member of a protected class. She is an African American Woman, over the age of (40), who has disability (wears a hearing aid due to hearing loss).

15. Plaintiff Eppinger is a resident of the State of Tennessee, County of Hamilton.

16. Plaintiff Eppinger is an employee, as defined by Title VI, Title VII, the ADA, and ADEA

17. Defendant, University of Tennessee, at Chattanooga, is an employer as defined by Title VI, Title VII, the ADA, and the ADEA.

18. Defendant, University of Tennessee, at Chattanooga, can be served with process through the UTC Office of General Counsel.

## DISCRIMINATION BASED ON RACE TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 200E

19. Plaintiff Eppinger began working for the UTC in the year 2011 as an Administrative Assistant III in the Occupational Therapy Department.

20. As an Administrative Assistant III in the Occupational Therapy Department, Plaintiff Eppinger was isolated and forced to work out of a closet after inquiring about the Department's admission's criteria.

21. Plaintiff Eppinger noted that an African American male applicant was denied admission to the Occupational Therapy department who seemed to be more qualified than a White female applicant, who was admitted.

22. After working collaboratively with management from 2011 to 2015, Plaintiff Eppinger was informed that she was not a good fit and that she needed to seek alternate employment within the University.

23. The Occupational Therapy Department underwent a reorganization and Plaintiff Eppinger's duties were transferred to an alternate employee.

5

24. Plaintiff Eppinger was essentially stripped from all of her assigned duties and forced to apply for alternate positions within UTC.

25. With the assistance of Human Resources, Plaintiff Eppinger applied for and was hired for the position of Administrative Assistant III with the UTC Facilities Planning and Management Department.

## DISPARATE TREATMENT BASED ON RACE

26. Eppinger came to the position of Administrative Assistant III with a Bachelor of Science degree from Covenant College in Organizational Management, and Associated Degree of Applied Science in Office Administration. She has worked within the UTC system for over ten years without being promoted **(Exhibit E, Part 18 - 20)**, credentials therein.

27. In her current position with the UTC Facilities Division, Eppinger has consistently received favorable performances reviews, meeting or exceeding all of the requirements of her current position as an Administrative Assistant III **(Exhibit F, Part 24 - 42)**, credentials therein.

28. Despite Eppinger's advance degrees and performance history, her peers have been treated more favorable than she has, receiving higher yearly performance ratings and access to opportunities for increased wages and/or work assignments that lead to advancement **(Exhibit F, Part 23 - 25)**, credentials therein.

29. Plaintiff Eppinger is the only female, African American, Administrative Assistant III employed in the UTC Facilities, Planning, and Management Department.

30. It is her information and belief that she has been treated less favorable than her peers due to her race, age, gender, and disability.

## UNEQUAL PAY FOR PERFORMANCE

31. Linda Sue Stephens's job duties included responsibility for Eppinger's yearly performance reviews. Plaintiff Eppinger consistently received favorable performance evaluations and was awarded yearly performances-based salary increases **(Exhibit G, Part 26 -42)**, credentials therein.

32. Even though Plaintiff Eppinger received the same favorable reviews on her yearly skills assessment as her peers, Eppinger's compensation was not awarded at the same rate as her Non-African American Administrative Assistant III peers.

6

33. In 2018, Eppinger addressed the issue of unequal pay to her supervisor, Linda Sue Stephens, regarding two white females, Kelsey Battles, and Amy Steele, (Work Control specialist) who were given a higher yearly raise then Eppinger, Kelsey Battles is now System Analysis with two direct reports as of February 2020, job was never posted.

34. The rating to pay discrepancy was corrected with a pay increase consistent with the written evaluation and back pay.

35. In 2019, Eppinger, received a performance rating with the numerical value of twenty-three. She again went to her supervisor, Linda Sue Stephens, and asked why the numerical value given does not reflect the performance report.

36. Donnie Hodge, supervisor of Facilities Operation & Maintenance, and Linda Sue Stephens, had informed Eppinger that a score higher than twenty-three (23) make one eligible for up to 5% pay raise on yearly performance reviews.

37. Eppinger consistently received a performance score of a twenty-three from 2015-2019.

38. Eppinger received a score higher than (23), only after she refused to accept a rating less than twenty-five. Plaintiff Eppinger did not receive a performance review as her counterparts for year 2020 **(Exhibit G 43)**.

39. On December 9, 2021, The Tennessee Human Rights Commission sent notification to UTC that a complaint of employment discrimination had been filed **(Exhibit H Part 44-45)**.

40. Two days later, Eppinger was called into the office and received a pay raise to $3.86 **(Exhibit H 46)**

## **UNEQUAL ADVANCEMENT OPPORTUNITIES BASED ON RACE**

41. On May 28, 2018, Amanda Winesburgh, over the age of 40, white female was hired in the non-exempt position of Project coordinator, position name changed with identical duties of Administrative Assistant III **(Exhibit I Part 43 - 48)**.

42. Prior to her promotion, Amanda Winesburgh held the position of Administrative Assistant III.

43. April 1, 2019, Amanda Winesburgh was promoted from non-exempt to exempt status

44. April 20, 2020, Amanda Winesburgh was promoted to Business Manager identical duties **(Exhibit I Part 43-48)**.

7

45. May 17, 2019, Debbie Corey, white, female, over the age of forty, was promoted from non-exempt status to exempt status, similar, duties to role of Administrative Assistant III, Eppinger **(Exhibit I 43-48)**.

46. February, 2021, Kelsey Battles, white female, under age of 40, was promoted to a lead role with two direct reports, from **Work Control Specialist** to **System Analysis** after my file complaint in year 2020 (see page 8).

47. On November 2021, Brandon Pratt, under the age of 40, African American male, was promoted from non-exempt status to exempt status to exempt status, Pratt is partner of selected promotional group, as well as, often lunch partners.

48. Plaintiff Eppinger's has not been given the same or similar opportunities for advancement to lead roles, or to position reclassification opportunities as her peers.

49. It is her information and belief that her race, age, gender, and disability have played a role in her inability to gain access to promotional opportunities, which is a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e ("Title VII").

## **THE ROLE OF POSITION RECLASSIFICATION**

50. According to UTC, Assistant Vice Chancellor of Human Resources, Laure Pou, the position of business Manager was a reclassification with revised position responsibilities specifically established for Amanda Winesburgh, Eppinger's request for criteria/qualification was not granted **(Exhibit J Part 54 - 55)**.

51. According to Human Resources, once it was determined that Ms. Winesburgh met the requirements for assuming the duties of the revised position description, a search was not required that would result in soliciting applications or reviewing the qualifications of applicants **(Exhibit J Part 54 - 55)**.

52. It is Plaintiff Eppinger's information and belief that African American male and female applicants have had to apply for the interview to be considered for promotional opportunities.

53. Examples include the promotions of Myra Armstrong, black female, and Freddy Sturdivant, black male, as supervisors (foreman) of Building Services **(Exhibit K Part 56-62)**.

54. Plaintiff Eppinger typed Myra Armstrong resume for her interview with Anthony McClellan.

55. What follows is a listing of individuals with the UTC Facilities and Planning & Management Department, who were not required to apply or interview for the positions listed below:

8

1. Chelsey Ewing – Project Coordinator 2016 – white female
2. Kellie Flood- Space Project Management 2011- white female
3. Rob Henry Project Coordinator 2017 – white female
4. Anthony Storti – Logistics Analyst 2019 - white female
5. Amanda Winesburgh – Project Coordinator – 2018 – white female
6. Amanda Winesburgh – Business Manager – 2020 – white female
7. Brandon Pratt – Supervisor – 2020 -black male
8. Kelsey Battles – System Analyst - 2021 -white female

## RETALIATION AFTER ENGAGING IN PROTECTED ACTIVITIY

56. On December 31, 2020, Anthony McClellan contacted Plaintiff Eppinger and shared an onsite UT investigation was presently staged **(Exhibit L Part 63-65)**.

57. He then requested a conference meeting; conference room was locked, entry was unavailable.

58. Later that day he called on three-way call with Julie Brown, of Human Relations Managers for a meeting **(Exhibit L Part 63-65)**.

59. Due to phone anxiety, rapid heartbeat, Plaintiff Eppinger asked to reschedule a face-to-face meeting, which was re-scheduled for January 8, 2021 **(Exhibit L Part 63-65)**.

60. During the January 8, 2021 meeting, Plaintiff Eppinger was "interrogated" by untruths, example, McClellan attempted to influence Brown that Eppinger's working relation with co-worker Amanda Winesburgh was unacceptable.

61. McClellan office was to the right of Eppinger's office area, conversations by Plaintiff Eppinger could be heard by McClellan, both Eppinger and McClellan offices are in proximate.

62. McClellan always knew Plaintiff Eppinger be-friended Winesburgh on and off the job.

63. Plaintiff Eppinger once shared with McClellan that no matter how horrific Winesburgh treated Eppinger, she will always show love to her.

64. Example, (1) Winesburgh was invited by Plaintiff Eppinger, and attended where Plaintiff Eppinger worship, and Plaintiff Eppinger, and Winesburgh both sat on the same pew in worship services.

65. Example, (2) Plaintiff Eppinger purchased a Christmas gift for Winesburgh, additionally, McClellan had always heard friendly conversation outside his office amongst Plaintiff Eppinger and Winesburgh.

66. Other witnesses to confirm the relationship of Eppinger towards Winesburgh, Donnie Hodge, Kenny Tyler, Brandon Pratt, Chelsie Ewing, Linda Sue Stephens, etc., all can confirm friendly conversations from Eppinger to Winesburgh.

67. On April 15, 2021, Eppinger was notified via email that she was to attend a mandatory meeting with her Supervisor, Anthony McClellan, and Laure Pou, Vice Chancellor of Human Resources. McClellan did not disclose the reason, nor the subject matter of the meeting.

68. Plaintiff Eppinger subsequently received a Final Written Warning dated April 16, 2021, for behavior reportedly observed by her supervisor, Anthony McClellan in February 2021 between Eppinger and Winesburgh. The observed behavior referenced Eppinger making inquiries to Amanda Winesburgh regarding the new phone system installed in the office being used by Winesburgh only **(Exhibit M Part 66 - 67)**.

69. McClellan office is more than 25 feet from Winesburgh office to observed this would be impossible, only Winesburgh and Eppinger was present in the office when Plaintiff Eppinger stated "nice phone will everyone get a new phone, it would be fair for us all (Facilities team) to have a new phone, as well"?

70. Winesburgh stated "the phone was added because of renovations.

71. False, Linda Sue Stephens was place in the office before Winesburgh, renovations were completed, and Stephen's phone was identical to the Facilities team phone, an old phone.

72. On April 7, 2021, via email the Facilities team was notified of new phone installation coordinated by Business Manager, Amanda Winesburgh **(Exhibit N Part 68)**.

73. The write-up provides no specific description of the acts in question which constituted aggressive behavior, or any specific information that would identify the behavior that gave rise to the offense.

74. Plaintiff Eppinger had no prior disciplinary actions prior to the final Written Warning dated April 16, 2021.

75. On May 12, 2022, Plaintiff Eppinger was given a 13-score performance review and put on Performance Improvement Plan (PIP) and will not be eligible for a cross-the-board raise **(Exhibit E Part 20)**.

76. Plaintiff Eppinger signed performance as acknowledged receipt, and wrote Disagree;

77. On May 13, 2022 Plaintiff Eppinger met with Tom Ellis Assistant Vice Chancellor, Facilities, and McClellan's direct report, Plaintiff Eppinger stated to Ellis the evaluation is retaliatory and harassment.

10

78. Ellis stated to Plaintiff Eppinger that McClellan had reviewed the performance review with Human Resources prior to Plaintiff Eppinger's, May 12, 2022 review, and that he had no knowledge of Plaintiff Eppinger's review.

79. Ellis then advised Plaintiff Eppinger to submit a rebuttal.

80. On May 18, 2022, Plaintiff Eppinger submitted rebuttal then met with HR Laure Pou on June 15, 2022, when rebuttal material from Plaintiff Eppinger was never covered **(Exhibit O Part 69 - 70)**

81. Pou asked Plaintiff Eppinger, if she wanted further investigation, Eppinger stated "absolutely

82. It is Plaintiff Eppinger's belief, McClellan cannot justify the 13-score according to Eppinger's rebuttal and proof of evidence **(Exhibit C Part 16).**

83. Plaintiff Eppinger asserts that the above employment actions, is (1) motivated by Eppinger's challenge to UTC's employment practices, and (2) is not based in fact.

84. On June 15, 2022, Plaintiff Eppinger was excluded from 9-11 am campus brunch, McClellan passed Eppinger's office to offered front desk workers to join him, and ride to the event, Jean Betters was an attendee, and shared the information with Plaintiff Eppinger **(Exhibit P Part 71)**

## UNEQUAL DISCIPLINARY TREATMENT BASED ON RACE

85. Exempt employees at the University are paid monthly; annual leave and sick leave.

86. It is UTC policy that exempt employees deviate all leave time.

87. It was known throughout the Facilities, Planning and Management Department that a white, female UTC employee wrongfully obtained salary payment for six years without consequence. No disciplinary action was taken.

88. This is in direct contrast to Plaintiff Eppinger, who received a Final Written Warning with **NO** advance written warnings, or progressive disciplinary action.

89. As a direct result of the receipt of Final Written Warning, Eppinger could not apply for UTC job for period of six months.

90. Eppinger further contends that UTC is liable of retaliation and hostile work environment based on the following factors:

11

a. Eppinger engaged in protected activity when she questioned why the position of Business Manager was not posted
   b. Eppinger's Supervisor knew that she had engaged in protected activity
   c. Eppinger's Supervisor subjected her to adverse employment action; which included the removal of select job functions
   d. And, a causal connection exists between the protected activity and the adverse employment action

91. UTC failed to make a reasonably informed and considered decision before taking such a profound adverse employment action as a Final Written Warning.

92. Any reasonable employee would find a final written warning so adverse as to have a chilling effect on their willingness to engage in any further protected activity.

## **TRANSFER OF JOB FUNCTIONS**

93. Plaintiff Eppinger has been systematically subjected to retaliation after engaging in protected activity, which included being blocked from accessing information essential to her job duties and the reassignment of historic Administrative Assistant III position responsibilities

94. After being promoted to Business Manager, Amanda Winesburgh, completed two part time employee's payroll for the Facilities Planning & Management Department **(Exhibit Q Part 72 - 74)**. From this date forward a pattern emerged in which select job functions were removed from Plaintiff Eppinger, which has the outcome of diminishing Eppinger's work assignments associated with advancement opportunities.

95. The reassignment of essential job duties has carried over the submission of invoices to accounting services and the entering of Motor Pool Invoices, a job function that has be assigned to Plaintiff Eppinger, for the last 5 years **(Exhibit R Part 75)**.

96. Once a job function is removed from Eppinger, a new process emerges that completely eliminates Eppinger's previously assigned duties associated with the function. Listed job functions removed from Eppinger by Anthony McClellan to Eppinger's coworkers:

   1. Managed conference room calendar – transferred to Jean Betters **(Exhibit R Part 75)**
   2. E-Termination – transferred to Amanda Winesburgh **(Exhibit R Part 75)**
   3. Motor Pool invoice processing – transferred to Debby Corey **(Exhibit R Part 75)**
   4. Construction invoice processing – transferred to Amanda Winesburgh
   5. Building Services Disciplinary letters – **(Exhibit R Part 75)**

12

97. Five examples of conference room reserved by Plaintiff Eppinger (**Exhibit R 75**), recently removed March 3, 2022, Plaintiff Eppinger had been scheduling from November 2020 – March 3, 2021.

98. Plaintiff Eppinger processed construction invoices from 2015-2021, removed

99. Plaintiff Eppinger processed "Disciplinary letters" on behalf of Corey McGraw, Building Service Supervisor from 2015-2022, later removed February 23, 2022.

100. McGraw reports to Anthony McClellan, four examples processed (**Exhibit R 4 of 75**).

101. Motor Pool invoices from 2015 – August 17, 2021, removed after six years (**Exhibit R Part 75**).

102. E-Termination from November 2020 – October 2021, removed after one year (**Exhibit R Part 75**).

103. All removed after Plaintiff Eppinger's filed complaint (**Exhibit R Part 75**)

104. On April 15, 2021, when Plaintiff Eppinger attempted to raise job encroachment (payroll) issues with Anthony McClellan, he became angry and shouted at her.

105. Plaintiff Eppinger on this day was verbally mocked, laughed at and told to leave McClellan's office.

106. Plaintiff Eppinger was blamed for having started this argument, despite it having originated with a simple request for information.

## **DISPARATE IMPACT UNEQUAL ACCESS TO ADVANCEMENT OPPORTUNITIES**

107. On March 8, 2021, Kelsey Battles under the age of 40 promotion was announced.

108. Plaintiff Eppinger, attempted to addressed the issues of Battle's promotion with Anthony McClellan. His only statement was "Cathy, I know where you are going with this" implying that Eppinger was unreasonable in making inquiries to management about a matter previously investigated by the THRC.

109. Plaintiff Eppinger's former supervisor, Linda Sue Stephens retired on November 30, 2020 making $26.00 hourly.

110. Rather than position Plaintiff Eppinger, who served as her back-up for five years, to assume her job functions, Linda Sue Stephens was asked to returned to her position on a part-time basis to train others and does the Budget, identical to recurring Administrative Assistant III position (**Exhibit S Part 83 - 85**).

111. Plaintiff Eppinger has the requisite knowledge, skills and abilities to act as back-up for Linda Sue Stephens for a period of five years. However, Plaintiff Eppinger was not considered for Mrs. Stephens position.

## DAMAGES

112. Plaintiff Eppinger suffers from panic attacks, depression, hair and weight lost and humiliation as a result of this stress associated with her employment environment.

113. UTC has acted with reckless indifference to the manner in which its position reclassification policies impact its employees who are members of a protected class.

114. The facts will show Eppinger's rights under both Federal and State of Tennessee equal employment opportunity laws continues to be ignored.

115. UTC has acted with malice and reckless indifference to Eppinger's civil rights, and therefore, must be held accountable for punitive damages.

**WHEREFORE**, Plaintiff Eppinger respectfully prays that this Court enter judgement as follows:

1. Accept Jurisdiction over this matter
2. Award Plaintiff for present, past, future of lost wages with interest
3. Award Plaintiff compensatory, liquidated, and punitive damages
4. Award Plaintiff Eppinger all court cost and fees incurred in connection with this action
5. Grant Plaintiff Eppinger such additional or alternative relief as the Court deems just and proper, which includes consideration for advancement in current department Facilities Planning & Management with equal salary as counterparts
6. Grant such additional or alternative relief as the Court deems just and proper
7. Order Defendants to conduct an analysis of the impact it's reclassification policy on members of protected classes, specifically the impact on racial minorities, and person with disability.
8. Award Plaintiff for violation of Title VII Civil Rights Acts 1964, as mended 42. U.S.2000e
9. Award Plaintiff damages from Amanda Winesburgh assigned duties encroachment from 2018 – present, harassment and retaliation

14

10. Award Plaintiff damages from Anthony McClellan from December 2020 to present for retaliation, bullied, harassment, unjustified low score on 2021 performance evaluation, and hostile work environment

11. Award Plaintiff damages from UTC Human Resources, conspiracy in connection with the actions of both Amanda Winesburgh and Anthony McClellan

12. Order Defendants to allow Plaintiff Eppinger to print proof of document from IRIS system in connection with performance review, etc.

13. Award Plaintiff for Unfair Business Practices

14. Order Defendant to allow Plaintiff to remain in Facilities Dept. as long as she desires

15. Award Plaintiff for Psychologist visits including deposits

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was delivered to the following persons set out below by U.S. mail and postage prepaid

On this _7th_ day of _July_ 20_22_

UTC of Tennessee at Chattanooga
Yoursef Hamadeh Esq.
Office of the General Counsel
615 McCallie Avenue
Chattanooga, TN 37403


UTC of Tennessee at Knoxville
Michael Fitzgerald, Esq
Office of the General Counsel
505 Summer Place, UTT # 1120A
Knoxville, TN 37902

15

STATE OF TENNESSEE
COUNTY OF HAMILTON

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA

| | |
|---|---|
| CATHY EPPINGER | Civil Action No: 1:21-CV-00268-KAC-CHS |
| Plaintiff, | |
| V. | |
| UNIVERSITY OF TENNESSEE | JURY TRIAL DEMAND |
| AT CHATTANOOGA | |
| Defendant, | |

## VERIFICATION

Personally appeared before the undersigned officer duly authorized to administer and receive oaths, Plaintiff **Cathy Eppinger**, who after being duly sworn, states that all of the allegations in the foregoing Verified Complaint for Damages and Demand for Jury Trial are true and correct to the best of her knowledge, information, and belief.

This 7th day of July 2022

_____
Cathy Eppinger

SWORN to subscribed before me,
This 7th day of July, 2022

_____ My commission expires 06/23/2025
NOTARY REPUBLIC

[Notary Seal: CORI ELSWICK, STATE OF TENNESSEE NOTARY PUBLIC, HAMILTON COUNTY]

16