UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CATHY EPPINGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:21-CV-268-KAC-CHS |
| | ) |
| UNIVERSITY OF TENNESSEE, | ) |
| AT CHATTANOOGA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action is before the Court on Defendant University of Tennessee at Chattanooga's "Motion for Summary Judgment" [Doc. 106] and Plaintiff Cathy Eppinger's "Motion for Leave to File Fourth Amended Complaint" [Doc. 129]. For the below reasons, the Court grants Defendant's Motion and denies Plaintiff's Motion.

**I.     Background[1]**

Defendant hired Plaintiff Cathy Eppinger, "an African American female" "over the age of 40," "in 2012 as an Administrative Support Assistant" for its "Department of Occupational Therapy" [Docs. 106-4 at 2 (Declaration of Laure Pou ("Pou Decl.") ¶ 8); 61 ¶ 2; 106-6 at 4; 106-7]. Plaintiff holds a "bachelor of Science Degree from Covenant College in Organizational Management, and Associated Degree of Applied Science in Office Administration" [Doc. 61 ¶ 26].[2]

---

[1] Because Plaintiff is the nonmoving Party, the Court describes the facts in the light most favorable to her. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[2] The Third Amended Complaint is verified [*See* Doc. 61 at 27]. At summary judgment, a verified complaint "carries the same weight as would an affidavit." *See, e.g., El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

"In 2015," Defendant's "Division of Academic Affairs underwent a significant reorganization" [Doc. 106-4 at 2 (Pou Decl. ¶ 9)]. As a result, Defendant needed to "reassign[]" "two Administrative Support employees" to vacant positions "in Facilities and Emergency Services" [Doc. 106-2 at 2 (Declaration of Tom Ellis ("Ellis Decl.") ¶ 5)]. Plaintiff was one of the employees reassigned to the Facilities Department [*Id.*].

"In 2017," the Facilities Department's "Construction Services area" requested that Defendant's Human Resources Department "post a position called Project Support Specialist" [Doc. 106-4 at 4 (Pou Decl. ¶ 22)]. The required "qualifications included," among other things, "familiarity with the construction industry" such as "knowledge and experience in electronic archiving of project documents, project management, architectural drawings and floorplans, and other concepts of value to the Construction Services unit" [Doc. 106-2 at 2-3 (Ellis Decl. ¶ 7)]. The position also required an "[a]ssociates degree in construction management" [Doc. 106-5 at 9 (Project Support Specialist Job Description)]. The position further required "1-3 years of related project management experience" [*Id.* at 13 (Project Support Specialist Job Description)]. Plaintiff "was not one of the applicants" for the position [Doc. 106-4 at 4 (Pou Decl. ¶ 23)]. There is a dispute regarding where Defendant posted the position [*See* Docs. 61 ¶ 41 ("job was never posted on [Defendant's] job website"); 106-2 at 2-3 (Ellis Decl. ¶ 7 ("Construction Services unit posted an internal position"))]. But there is no dispute that Plaintiff did not possess the required experience and qualifications for the position [Doc. 106-1 at 27 (Deposition of Cathy Eppinger ("Eppinger Dep.") 103:4-9)].

In 2018, Defendant chose Amanda Winesburgh, a white woman, for the Project Support Specialist position [Docs. 106-4 at 4 (Pou Decl. ¶ 23); 61 ¶ 41]. Winesburgh had "expertise in

2

contract and procurement matters" and her "background included ownership of a construction company" which made her a "valuable resource" [Doc. 106-2 at 3 (Ellis Decl. ¶ 9)].

"In early 2020," the Facilities "Department needed a dedicated full-time business manager" to "handle accounting for UTC's capital projects as well as department clearing accounts and billing" [*Id.* (Ellis Decl. ¶ 10)]. The Business Manager position required, among other things, "2+ years of experience" in "tracking and managing multiple project costs related to construction, renovations, and technology upgrades using" particular software [Doc. 106-4 at 16 (Business Manager Job Description)]. The position also required at least "2+ years of fund accounting in a lead role" [*Id.*]. Because Winesburgh had the "necessary accounting skills," Defendant added the Business Manager responsibilities to Winesburgh's portfolio and reclassified her to a Business Manager position [Doc. 106-2 at 3-4 (Ellis Decl. ¶ 11)].

Plaintiff "began sending emails to" Laure Pou, Defendant's Vice Chancellor for Human Resources, "demanding to know" why the Business Manager position "was not posted" and how Winesburgh's reclassification complied with Defendant's "EEO guidelines" [Doc. 106-4 at 5 (Pou Decl. ¶ 31); *see also id.* at 26]. "In July 2020," Plaintiff sent an email to Richard Brown, Defendant's Vice Chancellor for Finance and Administration, expressing personal misgivings with Winesburgh [*See* Doc. 106-4 at 23]. Plaintiff stated that Winesburgh "walks[] and talks the majority of her day making people think she knows more than God," and "needs to sit down, shut that mouth, and work for all that money the state is paying her" [*Id.*]. Plaintiff went on to say that Plaintiff "show[s] love to all, but if [she is] pushed, well ....you know the rest of the story, and you know I'm not afraid" [*Id.*]. In December 2020, Defendant "received notice from the Tennessee Human Rights Commission" that Plaintiff "filed a complaint proposing that" Winesburgh's

3

reclassification "constituted race discrimination" [Doc. 106-4 at 7 (Pou Decl. ¶ 46); *see also* Doc. 61 ¶ 39].

Defendant's "Executive Director of Facilities Planning and Operations," Anthony McClellan, an "African American," "began supervising [Plaintiff] on December 1, 2020" [Docs. 106-3 at 2 (Declaration of Anthony McClellan ("McClellan Decl.") ¶ 5); 106-6 at 5]. Under McClellan's supervision, Plaintiff "often engaged in unpredictable and unprofessional behavior" [Doc. 106-3 at 5 (McClellan Decl. ¶ 17)]. Indeed, Plaintiff had a "hostile encounter" with Winesburgh in "early 2021" [*Id.* (McClellan Decl. ¶ 19)]. Defendant's IT Department "was upgrading the Administrative Services Building" by implementing a new phone system [*Id.*]. Winesburgh's office was the first to receive a new phone as part of the upgrade [*Id.*]. Plaintiff "aggressively questioned her about the new phone," "create[ing] an uncomfortable environment" [Doc. 106-3 at 13 (Final Written Warning)]. When McClellan "attempted to speak with" Plaintiff about this incident, "and her inappropriate language toward" Winesburgh, Plaintiff responded by telling McClellan: "[e]very day you walk in here with your face in your butt, and you're supposed to be an example" [*Id.* at 5-6 (McClellan Decl. ¶ 20)].

During this time, Plaintiff's job "performance was inconsistent" too; Plaintiff "made many mistakes in processing invoices, paying bills, and other basic responsibilities" [*Id.* at 2 (McClellan Decl. ¶ 7)]. For example, Plaintiff "inadvertently paid" a "tree services vendor" "twice for the same job" [*Id.* at 8 (McClellan Decl. ¶ 27)]. When the "vendor then came to campus seeking assistance" to rectify the overpayment, Plaintiff "responded unprofessionally," requiring McClellan to "smooth out the relationship" [*Id.*]. As a result of this and other incidents, the

Facilities Department "spent many hours correcting [Plaintiff's] mistakes, clearing up late fees, and completing tasks that were her responsibility" [*Id.* at 2 (McClellan Decl. ¶ 7)].

Thereafter, Defendant "elected to give [Plaintiff] a Final Written Warning" on "April 16, 2021" [*Id.* at 6 (McClellan Decl. ¶ 22); *see also id.* at 13 (Final Written Warning))]. Defendant's "System-wide" disciplinary policy provides that although Defendant uses a "progressive discipline system," "a supervisor is not required to utilize every step in th[e] process," and may "skip or repeat any or all steps if warranted by the circumstances" [Doc. 106-4 at 35 (System-Wide Policy)]. The Final Written Warning informed Plaintiff that "[a]ny further instances of unsatisfactory work performance or work-related behavior" could "result in further disciplinary action, up to and including immediate termination" [Doc. 106-3 at 13 (Final Written Warning)].

On "July, 1, 2021," Plaintiff sued Defendant in the Circuit Court for Hamilton County, Tennessee, under the Tennessee Human Rights Act and various state law tort theories [*See* Doc. 1-1 at 4]. Plaintiff later amended her state court complaint to add federal law claims [*See id.* at 24]. Thereafter, Defendant removed that state action to this Court [*See* Doc. 1].

For more than a year, the Final Written Warning "had no impact on [Plaintiff]'s behavior" [Doc. 106-3 at 6 (McClellan Decl. ¶ 23)]. "On May 12, 2022," Defendant placed Plaintiff on a Performance Improvement Plan ("PIP"), requiring her to complete various tasks to improve her behavior and job performance [*See id.* at 20-24 (Performance Improvement Plan)]. Plaintiff responded to the "PIP with a 128-page 'rebuttal,'" and "made few, if any, efforts to improve" [*Id.* at 9 (McClellan Decl. ¶ 30)].

"In the fall of 2022," Defendant placed Plaintiff "on paid administrative leave in order to investigate her unauthorized access to confidential information and her use of this information for

5

personal reasons" [Doc. 106-2 at 5 (Ellis Decl. ¶ 23)].  Plaintiff obtained "a list of all [Facilities] Department employees who had received disciplinary actions or who were on leave associated with the Family Medical Leave Act," "with no authorization," and attached it to her filings in this action [*See* Docs. 106-4 at 11 (Pou Decl. ¶ 65); 38-1 at 143]. Ultimately, Defendant terminated Plaintiff's employment on "September 13, 2022" [Doc. 106-3 at 26].

Plaintiff's Third Amended Complaint is operative [*See* Doc. 61]. Though unclear, it appears to assert several claims against Defendant: "violations of Title VII of the Civil Rights Act of 1964 . . . Age Discrimination in Employment Act of 1967 . . . Americans with Disabilities Act of 1990[3] . . . Section 207(f) of GINA," and "the Privacy Act of 1974" [*See* Doc. 61 ¶ 1].  Plaintiff is proceeding pro se [*See* Doc. 30].  Defendant filed the instant Motion for Summary Judgment, asserting that it is entitled to judgment as a matter of law on all of Plaintiff's claims [Doc. 106].  Plaintiff opposed the Motion [*see* Doc. 120], Defendant replied [Doc. 121], and Plaintiff filed a sur-reply with leave from the Court [Docs. 122, 125].  Plaintiff further requests leave from the Court to file a fourth amended complaint [*See* Doc. 129].  Defendant opposes Plaintiff's motion to amend [*See* Doc. 131].  Plaintiff replied and filed a supplement to her reply [Docs. 132, 133].

## II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court views the facts in the

---

[3] Although unclear from the Third Amended Complaint, Plaintiff appears to premise her disability discrimination claim on a 2014 exchange between an employee of Defendant and Pou where the employee informed Pou that Plaintiff wore "hearing aids" [*See* Doc. 106-1 at 66 (Eppinger Dep. 259:2-23)].

light most favorable to the nonmoving party and draws all reasonable inferences from those facts in her favor. *See Matsushita*, 475 U.S. at 587. The moving party bears the burden of demonstrating that no genuine dispute of material fact exists. *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 323 (6th Cir. 2023) (citation omitted). Once the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *See Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022) (quotation omitted).

Rule 56, however, "does not require a court to draw every possible inference, no matter how stretched, in the nonmovant's favor." *Walden v. Gen Elec. Int'l, Inc.*, 119 F.4th 1049, 1061 (6th Cir. 2024). Indeed, a "party may not avoid summary judgment by resorting to speculation [or] conjecture." *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) (quotation omitted). Instead, "[a] genuine issue of material fact exists" only if "there are disputes over" specific facts "that might affect the outcome of the suit under the governing law." *See Regions Bank v. Fletcher*, 67 F.4th 797, 802 (6th Cir. 2023) (citation and quotation omitted). The Court does "not weigh the evidence or make credibility determinations." *See Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021).

### III. Analysis

#### A. Plaintiff's Title VII Race Discrimination Claim Fails.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to" her "compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff relies only on circumstantial evidence of discrimination, the *McDonnell Douglas* burden-shifting rule applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022).

7

Under *McDonnell Douglas*, a plaintiff bears the burden of establishing a prima facie case of discrimination. *See Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (citation omitted). If a plaintiff succeeds, the "burden shifts to" the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's" treatment. *See id.* (quotation omitted). And if the defendant succeeds there, the burden shifts back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Id.*

To establish a prima facie case here, Plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the job she sought; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *See id.*

Here, Plaintiff fails to establish a prima facie case of racial discrimination. Liberally construed in her favor, Plaintiff appears to premise her race discrimination claim on the theory that Defendant's hiring of Winesburgh for the Project Support Specialist position and then reclassifying Winesburgh into the Business Manager position—instead of Plaintiff—constitutes discrimination because of her race [*See* Docs. 61 at 8; 106-1 at 29 (Eppinger Dep. 111:17-22); 120 at 17, 19-20]. Reviewing the evidence in the light most favorable to Plaintiff, however, she fails at the second element because Plaintiff was not qualified for either position.

The Project Support Specialist position required an "[a]ssociates degree in construction management," [Doc. 106-5 at 9 (Project Support Specialist Job Description)], which Plaintiff admits she did not have and does not have [*See* Doc. 61 ¶ 26]. The position further required "1-3 years of related project management experience" [Doc. 106-5 at 13 (Project Support Specialist Job Description)]. Plaintiff concedes that she did not have and does not have that experience,

8

either [Doc. 106-1 at 27 (Eppinger Dep. 103:4-9)]. The Business Manager position required, among other things, at least "2+ years of experience" in "tracking and managing multiple project costs related to construction, renovations, and technology upgrades using" particular software [Doc. 106-4 at 16 (Business Manager Job Description)]. Plaintiff conceded that she did not have that experience [*See, e.g.*, Doc. 106-1 at 31 (Eppinger Dep. 121: 14-19)]. Plaintiff further demonstrated that she was unfamiliar with basic concepts in the construction industry [*Id.* at 33-34 (Eppinger Dep. 127:1-130:2)]. For these reasons, Plaintiff was unqualified for the Project Support Specialist and Business Manager positions and therefore cannot establish a prima facie case of race discrimination.

Plaintiff seeks to resist this conclusion in two (2) ways. **First**, Plaintiff appears to assert, pointing to no evidence, that Defendant fabricated the job requirements for both positions [*See, e.g.*, Doc. 120 at 20]. That unsupported speculation cannot overcome summary judgment. *See Walden*, 119 F.4th at 1061; *see also K.V.G. Props., Inc.*, 900 F.3d at 823. **Second**, Plaintiff argues that even if she was unqualified for the position, Defendant had an obligation to train her so she would have the requisite experience and qualifications [*See, e.g.*, Doc. 120 at 4 (arguing that Plaintiff can establish a prima facie case because Defendant did not provide Plaintiff with "qualification[s]/credential[s]")]. But Title VII does not require employers "to give special training and guidance" to employees. *See Johnson v. Michigan St. Univ.*, 547 F.Supp 429, 441 (W.D. Mich. 1982) (citation omitted).

Nevertheless, even if Plaintiff could establish a prima facie case, her race discrimination claim would still fail. Defendant has presented a legitimate, nondiscriminatory reason for selecting Winesburgh over Plaintiff for the Project Support Specialist and Business Manager Positions—Winesburgh had the requisite experience and qualifications to perform each of these

9

roles [Doc. 106-2 at 2-3 (Ellis Decl. ¶ 7)]. Plaintiff's response to this evidence is, essentially, that it is all "fabricated" too [*See, e.g.*, Doc. 106-1 at 24 (Eppinger Dep. 92:17-19)]. But Plaintiff's unsupported claim of misrepresentation does not create a genuine dispute of material fact. *See Walden*, 119 F.4th at 1061; *see also K.V.G. Props., Inc.*, 900 F.3d at 823.

Even if Plaintiff's claim made it to the third step in the *McDonnell Douglas* framework, she "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *See Jackson*, 814 F.3d at 778 (quotation omitted). Under the law, Plaintiff could attempt to show pretext in several different ways. *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). But Plaintiff has pointed to no competent evidence that Defendant's reasons for its actions were pretextual. Speculation and unsupported arguments that Defendant fabricated documents, [*see, e.g.*, Doc. 106-1 at 24 (Eppinger Dep. 92:17-19)], will not do. *See Walden*, 119 F.4th at 1061; *see also K.V.G. Props., Inc.*, 900 F.3d at 823. Accordingly, Plaintiff's Title VII race discrimination claim fails.

### B. Plaintiff's Age, Sex, and Disability Discrimination Claims Fail Too.

Plaintiff's Third Amended Complaint focuses primarily on Plaintiff's Title VII race discrimination and retaliation claims, but it makes some references to potential claims of age, sex, and disability discrimination [*See* Doc. 61]. These claims, however, fail for the same reason Plaintiff's race discrimination claim fails: she has not identified a genuine dispute of material fact regarding whether she was qualified for either of the positions at issue. *See Thompson v. Fresh Products*, 985 F.3d 509, 526 (6th Cir. 2021) (explaining that a prima facie case of age discrimination under the ADEA requires a plaintiff to show she was qualified for the relevant position); *Baggett v. City of Cincinnati*, No. 22-3338, 2022 WL 17337851, at *2 (6th Cir. Nov. 30,

10

2022) ("To establish a prima facie case for [sex] discrimination, a plaintiff must show she was . . . qualified for the position."); *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019) (citation omitted) (explaining that an element of the prima facie case for disability discrimination is that a plaintiff must be "otherwise qualified for the position"). Accordingly, the Court dismisses these claims.

### C. Plaintiff's Title VII Retaliation Claim Fails.

Plaintiff has not raised a genuine dispute of material fact regarding her Title VII retaliation claim either. Under Title VII, an employee may sue an employer for retaliating against her for opposing a discriminatory practice. 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* rule applies here too because Plaintiff purports to rely on circumstantial evidence of retaliation [*See. e.g.*, Doc. 106-1 at 41 (Eppinger Dep. 159:20-23)].

To establish a prima facie case for retaliation here, Plaintiff must show that (1) she engaged in a protected activity, (2) the defendant knew of her conduct, (3) the defendant took an adverse employment action against her after her protected activity, and (4) there was a causal connection between the exercise of Plaintiff's protected activity and the adverse action. *See Wehrly v. Allstate Ins.,* No. 23-5736, 2024 WL 1308245, at *4 (6th Cir. May 27, 2024) (citation omitted). The law on causation is exacting. Binding precedent from the United States Court of Appeals for the Sixth Circuit requires a plaintiff to prove causation by traditional "but-for cause" principles. *See Boshaw*, 32 F.4th at 605.

Here, Plaintiff fails to establish a prima facie case because she has not raised a genuine dispute of material fact regarding whether engaging in a protected activity was the but-for cause of the adverse employment actions she experienced [*See* Doc. 61 ¶¶ 56-74 (describing the purported adverse employment actions taken against Plaintiff)]. Plaintiff points to no evidence of

11

Case 1:21-cv-00268-KAC-CHS    Document 135    Filed 07/24/25    Page 11 of 14
PageID #: 3227

causation; and at summary judgment, that failure is fatal to her claim. *See Zakora*, 44 F.4th at 464. Even if Plaintiff could establish a prima facie case, though, Defendant has proffered at least one legitimate, nondiscriminatory reason for the adverse employment actions: Plaintiff's unprofessional behavior [*See* Doc. 106-3 at 5-6 (McClellan Decl. ¶ 20)]. *See, e.g.*, *Velzat v. Williamson Med. Ctr.*, 627 F. App'x 534, 541 (6th Cir. 2015) (concluding that an "unprofessional email" and "insubordination" toward supervisors are legitimate, nondiscriminatory reasons for an adverse employment action). And as with her race discrimination claim, Plaintiff points to no evidence showing pretext. Plaintiff's Title VII retaliation claim thus fails.

### D. Plaintiff's Purported Genetic Information Nondiscrimination Act And Privacy Act Claims Fail.

Plaintiff's two remaining claims also fail. The Third Amended Complaint makes a brisk reference to "Section 207(f) of GINA," which the Court infers is a reference to the Genetic Information Nondiscrimination Act ("GINA") [*See* Doc. 61 ¶ 1]. But any GINA claim Plaintiff sought to raise would fail. GINA provides that it is "an unlawful employment practice for an employment agency to request, require, or purchase genetic information with respect to an individual or family member of the individual." *See Williams v. Graphic Packaging Int'l, Inc.*, 790 F. App'x 745, 754 (6th Cir. 2019) (quoting 42 U.S.C. § 2000ff-2(b)). Plaintiff points to no evidence that Defendant requested, required, or purchased relevant genetic information or retaliated against Plaintiff on a qualifying basis. The Third Amended Complaint also alludes to a claim under the "Privacy Act of 1974" [*See* Doc. 61 ¶ 1]. To the extent Plaintiff intends to assert such a claim, however, it would fail. "[T]he Privacy Act applies exclusively to federal agencies," which Defendant is not. *See Schmitt v. City of Detroit*, 395 F.3d 327, 331 (6th Cir. 2005). Therefore, these two potential claims fail.

### E. The Court Denies Plaintiff's Motion To Amend Her Third Amended Complaint Because It Is Untimely And The Proposed Amendment Would Be Futile.

Plaintiff seeks to amend her complaint a fourth time [*See* Doc. 129], but the Court denies that request for two (2) independent reasons. **First**, the deadline for Plaintiff to amend her pleading had long passed when Plaintiff made her request [*See* Docs. 22 at 3; 57 at 3]. And she has not even attempted to establish good cause. *See* Fed. R. Civ. P 6(b). **Second**, amendment would be futile. As applicable here, Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The Court may, however, deny a motion to amend if the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Permitting amendment would be futile "when, after including the proposed changes, the complaint still could not withstand a Rule 12(b)(6) motion to dismiss." *See Stanley v. W. Mich. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (citation omitted).

Here, Plaintiff's proposed amendment would be futile. Plaintiff wishes to amend her Third Amended Complaint to add a claim under "42 U.S.C. § 1981" [*See* Doc. 129 at 1]. Defendant, however, is a public university and "arm of the State." *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). The Eleventh Amendment of the United States Constitution makes Defendant "immune from suit" on Plaintiff's Section 1981 theory. *See id.* Plaintiff points out—correctly—that Congress may abrogate a state's sovereign immunity in some instances [*See* Doc. 133 at 1]. But Plaintiff points to no binding precedent holding that Section 1981 abrogated the State's immunity here [*See id.*]. In fact, prevailing precedent holds that Section 1981 does **not** abrogate Defendant's sovereign immunity. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

13

## IV. Conclusion

For the above reasons, the Court (1) **DENIES** Plaintiff's "Motion for Leave to File Fourth Amended Complaint" [Doc. 129] and (2) **GRANTS** Defendant University of Tennessee at Chattanooga's Motion for Summary Judgment [Doc. 106] and **DISMISSES** this action. An appropriate judgment shall enter.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge